IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTTSDALE INSURANCE CO., a/s/o
CHRIS CHERNEY and KARLY CHERNEY,

        Plaintiff,

v.                                                                              Case No. 6:14-cv-01183-JTM

DEERE & COMPANY,

        Defendant.

## MEMORAMDUM AND ORDER

Scottsdale Insurance, as subrogee of Chris and Karly Cherney, filed this action for damages after the Cherneys' John Deere combine caught fire while harvesting wheat. The combine was destroyed. Scottsdale's claim is for breach of an express warranty.[1]

The matter is now before the court on two motions to exclude expert testimony. The first motion, by Deere, pertains to Scottsdale's fire expert Raymond Thompson. The motion simply seeks to exclude portions of Thompson's testimony which the court previously determined were inadmissible. *See* Dkt. 57 at 5 ("Thompson's testimony is admissible only as to the origin of the fire, not whether a system or component failed or contained a defect in materials or workmanship."). That motion (Dkt. 60) is granted.

The second motion, by Scottsdale, seeks to exclude testimony from Deere's two fire experts, Michael Senneff and Josh Oltrogge. Dkt. 63. Scottsdale argues that opinions

---

[1] The court dismissed a claim for breach of implied warrant on summary judgment. Dkt. 57.

of these witnesses about proper maintenance of the combine are inadmissible and "[t]herefore the Deere's Experts testimony regarding the possibility that the fire was caused by failure to clean crop debris from the Combine should be excluded." Dkt. 63 at 1.  Scottsdate additionally argues that the testimony of these two witnesses is cumulative and that Deere should be limited to one expert on causation.

I. Legal Standard.

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applies the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule requires a court to act as a gatekeeper to ensure that expert testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) (discussing evidence and reliability); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending gatekeeping role to all expert testimony).

In determining whether expert testimony is admissible, the court generally must first determine whether the expert is qualified to render an opinion. If the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).  The purpose of the

*Daubert* inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

    1. <u>*Senneff's opinion that the operator/owner had not made sufficient efforts to keep the combine free of crop debris accumulation*</u>. Dkt. 63 at 3.

Deere expert Michael Senneff opined, among other things, that it is not possible under National Fire Protection Association (NFPA) methods to locate a point of origin of this fire and, as a result, it is not possible to identify the cause of the fire. He said that under NFPA standards the cause must be classified as undetermined. He nevertheless advanced what he said was a "reasonable hypothesis on the cause of the fire," namely that:

> The presence of the accumulation of unacceptable levels of crop debris at more than one location on the burned combine suggests that the combine operator/owner had not made sufficient efforts to keep the combine free of such accumulations in the time leading up to discovery of the fire. At an undetermined point on the combine, the debris was ignited. The crop debris fire then propagated to the point where it eventually involved the ignition of combustible components of the combine.

Dkt. 63-1 at 9. Scottsdale's motion seeks to exclude Senneff's opinion that the operator had not made sufficient efforts to keep the combine free of debris. Dkt. 63 at 3, 16. Scottsdale's reply brief goes further, however, arguing that Deere's experts "should not be permitted to testify that crop debris accumulation is a 'reasonable hypothesis' for the

3

fire when they have already opined that the cause of the fire is 'undetermined'…." Dkt. 69 at 1.

Insofar as Scottsdale's motion seeks to keep Senneff from offering any opinion that the Cherneys did not make "sufficient efforts" to keep the combine free of crop accumulation or that they did not heed fire prevention warnings about crop accumulation, the motion to exclude such opinions is granted. No showing has been made that Senneff has the expertise to opine on whether the Cherneys made adequate efforts to clean the combine, nor has it been shown that any such opinion was based on adequate facts or a reliable method. No showing has been made that Senneff undertook any systematic investigation or evaluation of the Cherneys' cleaning efforts. Nor would such testimony be helpful to the jury. Senneff will not be permitted to give opinions assessing fault to the Cherneys for what he might consider to be improper or insufficient cleaning of the combine. His testimony will be limited to opinions within the bounds of his investigation and within the realm of an expert on causes and origins of fire.

With regard to that expertise, Senneff will not be prevented from identifying as a reasonable hypothesis that the ignition of crop debris accumulation may have been started the fire. (This opinion may also include his assessment of the condition of the combine and whether it exhibited an accumulation of crop material constituting a fire hazard.) Contrary to Scottsdale's suggestion, Senneff has identified a factual basis for

4

that opinion and has tied it to evidence in the case.[2] Additionally, Scottsdale has not shown it is contrary to NFPA standards for Senneff to identify such a hypothesis. Notwithstanding his ultimate conclusion that the cause of the fire is undetermined under NFPA standards, Senneff states it is proper to identify a reasonable hypothesis on causation to show that another investigator has improperly eliminated that potential cause in reaching his conclusion. Dkt. 67-1 at 6. Senneff opines that Scottsdale's expert "fails to adequately identify and account for the presence of accumulated crop debris on the subject combine." *Id*. Scottsdale cites no contrary expert testimony establishing that it is inappropriate to posit such a hypothesis for the purpose of showing that another investigator's conclusion on causation is unsound. The request to exclude this opinion will be denied.

2. *Oltrogge's opinion that the owner/operator had not made sufficient efforts to keep the combine free of crop debris accumulation*. Dkt. 63 at 8.

As it did with Mr. Senneff, the court will grant the motion to exclude any opinions from Mr. Oltrogge assessing fault or blame to the Cherneys for allegedly failing to properly maintain or clean the combine in accordance with the operator's manual or with safety signs on the machine. Again, Deere makes no showing that Oltrogge undertook an investigation of the efforts the Cherneys made to clean the

---

[2] Senneff relied in part on photographs which he said showed an accumulation of crop debris amounting to a fire hazard on various parts of the Cherneys' combine. A jury might reasonably infer that accumulated crop debris was also present in the area where the fire started. Senneff also has knowledge of the potential for accumulated crop material to cause fires based on his prior investigations of combine fires. He additionally cites a statistical study on combine fires which allegedly "suggests that there may be a causal relationship between the time of day that a fire occurs and the level of cleanliness of the combine," Dkt. 67-2 at 6, although an (apparently) inconclusive study of this sort does not appear to be a reliable basis for a fire causation opinion.

combine. Like Senneff, Oltrogge may give his opinion as to whether the combine displayed an accumulation of crop debris amounting to a fire hazard as well as opinion on the role that accumulated crop debris played in the fire, but his opinions as to whether the Cherneys made adequate efforts to clean the machine are excluded.

In so finding, the court concludes that testimony from these experts attempting to assess the efforts of the Cherneys to clean the combine would not be helpful to a jury. The jury can make its own determination from all the evidence in the case -- including testimony from the Cherneys and from Senneff or Otrogge that photos of the combine showed accumulated crop debris -- as to whether the Cherneys made sufficient efforts to clean debris from the combine.

3. *Whether Deere should be limited to one expert on fire causation*. Scottsdale argues that the testimony of Sennoff and Otrogge together would be "excessively cumulative and minimally probative," Dkt. 63 at 15, such that Deere should be limited to calling only one of these witnesses at trial.

In response, Deere represents that Senneff's testimony will focus on disproving Scottsdale's theory that the origin of the fire was near the diesel particulate filter (DPF), while the thrust of Oltrogge's testimony will be on explaining the DPF system and the computer and software that control it. Dkt. 67 at 18.

Courts have discretionary authority to limit the number of experts who may testify upon a given subject. *Treaster v. Healthsouth Corp.*, 2006 WL 1580980, *1 (D. Kan., June 5, 2006); Fed. R. Civ. P. 403 (court may exclude needless presentation of cumulative evidence). At this stage, plaintiff has not shown that the testimony of these two

6

witnesses would be needlessly cumulative. Deere has identified different areas of expertise of the two witnesses and different subjects they will cover in their testimony.

**IT IS THEREFORE ORDERED** this 16th day of November, 2015, that Deere's Motion to Exclude Testimony (Dkt. 60) is GRANTED; Scottsdale's Daubert Motion (Dkt. 63) is GRANTED IN PART and DENIED IN PART as stated in this order.

_____s/ J. Thomas Marten___
J. THOMAS MARTEN, Judge